IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ON SEMICONDUCTOR CORPORATION,
and SEMICONDUCTOR COMPONENTS
INDUSTRIES, LLC;

        Plaintiffs,

   v.

POWER INTEGRATIONS, INC.

        Defendant.

C.A. No. 17-247-LPS-CJB



REDACTED

## POWER INTEGRATIONS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SHAW KELLER LLP
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

FISH & RICHARDSON P.C.
Joseph B. Warden (No. 5401)
Warren K. Mabey Jr. (No. 5775)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
warden@fr.com
mabey@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210-1878
scherkenbach@fr.com

Howard G. Pollack
Michael R. Headley
Neil A. Warren
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
pollack@fr.com
headley@fr.com
warren@fr.com

*Attorneys for Power Integrations, Inc.*

Dated:  August 20, 2019

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT .......................................................................................................1

        A.      The Court Should Deny Judgment on PI's Dropped '483 and
                '871 Patents...........................................................................................1

        B.      The Court Should Deny Summary Judgment on Notice and Pre-
                Suit Damages for PI's '851 and '366 Patents ............................................2

        C.      The Court Should Deny ON's Motion for Summary Judgment
                of Noninfringement of the '851 Patent and Instead Grant PI's
                Motion Based on Issue Preclusion ..............................................................6

        D.      The Court Should Deny ON's Motion for Summary Judgment
                of Noninfringement of the '366 Patent .....................................................13

        E.      The Court Should Deny ON's Motion for Summary Judgment
                of Noninfringement of the '788 Patent .....................................................17

        F.      The Court Should Deny ON's Motion for Summary Judgment
                of Noninfringement of the '475 Patent .....................................................18

        G.      The Court Should Deny ON's Motion for Summary Judgment
                on Willfulness ..........................................................................................19

III.    CONCLUSION...................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcon Research Ltd. v. Barr Laboratories, Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014)......................................................................1, 2

*Amsted Industries Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994)..............................................................................5

*Apple, Inc. v. Samsung Electronics Co.*,
  No. 12-cv-00630-LHK, 2014 WL 252045 (N.D. Cal. Jan. 21, 2014) ...................10

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010)..........................................................................10

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998)..........................................................................14

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
  No. 13-cv-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ...................9

*Free Motion Fitness, Inc. v. Cybex Intern., Inc.*,
  423 F.3d 1343 (Fed. Cir. 2005)..........................................................................17

*Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*,
  616 F.3d 1357 (Fed. Cir. 2010)............................................................................5

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001)............................................................................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011)........................................................................................22

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*,
  734 F.3d 1353 (Fed. Cir. 2013)..........................................................................12

*Intellectual Ventures I LLC v. Symantec Corp.*,
  No. 13-cv-440-LPS, 2016 WL 948879 (D. Del. Mar. 10, 2016)...........................10

*J & M Corp. v. Harley-Davidson, Inc.*,
  269 F.3d 1360 (Fed. Cir. 2001)..........................................................................16

*Leader Technologies, Inc. v. Facebook, Inc.*,
  770 F. Supp. 2d 686 (D. Del. 2011).................................................................6, 7

*Opticurrent, LLC v. Power Integrations, Inc.*,
    No. 17-cv-03597-EMC, 2019 WL 2359207 (N.D. Cal. June 4, 2019)....................................1

*Personalized User Model, L.L.P. v. Google, Inc.*,
    C.A. No. 09-525-LPS, D.I. 527 (D. Del. Sep. 20, 2013) ...........................................................2

*Power Integrations, Inc. v. Fairchild Semi. Int'l, Inc.*,
    578 F. Supp. 2d 698 (D. Del. Sept. 24, 2008)................................................................11, 12

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l*,
    711 F.3d 1348 (Fed. Cir. 2013)...........................................................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)..............................................................................................8

*Samsung Electronics Co., Ltd. v. Quanta Computer, Inc.*,
    No. C-00-4524, 2006 WL 2850028 (N.D. Cal. Oct. 4, 2006) ...................................................4

*Skedco, Inc. v. Strategic Operations, Inc.*,
    685 Fed. Appx. 956 (Fed. Cir. 2017) ...................................................................................10

*United States v. Austin*,
    54 F.3d 394 (7th Cir. 1995) .................................................................................................4

**Statutes**

35 U.S.C. §112.....................................................................................................................13

## I.    INTRODUCTION

The Court should deny ON's motions for summary judgment.  The first involves patents that PI has dropped from the case.  The rest depend on disputed facts, waived and incorrect claim constructions, misread prosecution history, disagreements between the parties' experts, and attorney argument unsupported by evidence.

## II.    ARGUMENT

### A.    The Court Should Deny Judgment on PI's Dropped '483 and '871 Patents

PI informed ON last year that it was dropping its '483 and '871 patents to streamline the case.  (D.I. 240-2, Ex. 2.)  Under such circumstances, judgment on the merits is not appropriate, and the Court should instead dismiss these patents without prejudice.  Applying Third Circuit law, the Federal Circuit recently clarified that "[t]he scope of any judgment should conform to the issues that were actually litigated."  *Alcon Research Ltd. v. Barr Laboratories, Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) (affirming denial of judgment on dropped patents); *accord Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597-EMC, 2019 WL 2359207, at *2 (N.D. Cal. June 4, 2019) (denying judgment on the merits for dropped invalidity defense).  Moreover, "a patentee's announcement that it [is] no longer pursuing particular claims, coupled with its ceasing to litigate them, [is] sufficient to remove those claims from the case even without [any] formalities."  *Alcon*, 745 F.3d at 1193.  That is exactly what PI did in this case, making summary judgment inappropriate.[1]

---

[1] While ON did plead a declaratory judgment of noninfringement for the '483 and '871 patents (in response to PI's Complaint), it did not respond to PI's 2018 email with any suggestion that it would continue to pursue that declaratory judgment after PI dropped these patents to streamline the case.  PI was thus not on notice that these patents remained active in the case, and had no reason to submit an expert report on them.

PI recognizes the Court granted summary judgment on a dropped patent in the case ON cites, *Personalized User Model, L.L.P. v. Google, Inc.*, C.A. No. 09-525-LPS, D.I. 527, at 8-9 (D. Del. Sep. 20, 2013). However, it does not appear the legal issue was fully briefed by the parties, as the opinion cites no cases. In addition, it predates the Federal Circuit's clarification of the law in *Alcon*. PI thus submits that the better course is to dismiss dropped patents without entering judgment on the merits.

In addition, ON has also dropped patents from this case. After the Court's claim construction order, ON wrote to PI that "[w]e have determined that we will stipulate to non-infringement with respect to the '923 patent, the '258 patent, and certain claims of the '211 patent." (Ex. A (Fulghum email to PI counsel dated 11/21/18).)[2] Should the Court agree with ON that summary judgment is the proper vehicle to address dropped patents, PI hereby cross moves for summary judgment of noninfringement of ON's '923 and '258 patents.

However, the best course is to deny summary judgment on dropped patents and claims. This is consistent with the law, and encourages streamlining litigation.

### B.    The Court Should Deny Summary Judgment on Notice and Pre-Suit Damages for PI's '851 and '366 Patents

As a factual matter, ON's assertion that it received no pre-suit notice for the '851 and '366 patents is belied by the evidence in its own a brief: a 2014 email from PI asserting that ON infringes both of these patents. (D.I. 240-2, Ex. 7.) The supposed "admissions" to the contrary that ON quotes are incomplete and focus on a legal, rather than factual, issue: whether use of the parties' 2014 communications violated a confidentiality agreement between the parties. Because

---

[2] The lettered exhibits A-MM are attached to the contemporaneously filed Declaration of Warren K. Mabey Jr.

ON chose to inject these communications into the parties' litigation, PI has now elected to rely upon them as well.

For example, ON attached PI's 2014 email to its Third Amended Complaint in California, as a basis for declaratory judgment jurisdiction. (Ex. B (CA Dkt. No. 94-5) at Ex. J.) ON also cited the parties' 2014 communications in its California infringement contentions as a basis for alleging indirect and willful infringement of its own patents. (Ex. C (ON's CA Infringement Contentions) at 11; *see also id.* at 41-42 ██████████████████████ ███████████████████████████████████████████████████████ ███████████████████████ ON also produced during discovery the slides that it gave to PI on September 25, 2014, and it used them as a deposition exhibit with PI's witness. (Ex. D (4/16/19 Walker Dep. Tr.) at 265:5-18.)

While ON apparently changed its strategy after it observed that PI's pre-suit damages are larger than its own, the bell cannot be un-rung. Moreover, contrary to ON's assertion, PI has been clear and consistent in its position that the pre-suit communications *should not* have been used in this case, but since they *have been*, they are evidence of notice, as PI's Rule 30(b)(6) witness on this topic, Cliff Walker, explained in testimony that ON omits from its motion:

> Q. So is it Power Integrations' position that the activities in 2014 between ON Semiconductor and Power Integrations did not constitute actual notice of infringement of the ON Semiconductor patents to Power Integrations?
>
> A. Well, that was our *original intent*. I'm not sure exactly how it has developed, but that was our intent that it not to be notice *but maybe it actually was depending on **if someone says, [w]ell, those were not settlement discussions and, therefore, not protected and, therefore, obviously the communications were notice**.* So –
>
> * * *
>
> Q. So I want to talk about each of these, but referring collectively to Exhibits 8, 10, 338 and any other phone calls or emails that may have been exchanged between Power Integrations and ON Semiconductor, is Power Integrations' position that none of these communications are evidence that Power Integrations provided ON Semiconductor with actual notice of

infringement of the Power Integrations' patents referred to, for example, as Exhibits 8 or 10?

> A.  Well, *my answer is qualified to the extent that ON agrees that these were settlement discussions* and, you know, covered by a 408 understanding, whether or not it was in writing or just verbal between the parties at the time.  It just *depends on the position.*
> To me, it goes both ways.  If we say it's settlement, then I agree that neither party received notice.  **If we decide, well, it actually wasn't settlement discussions, protected discussions despite the parties' intent and there was a misunderstanding, then maybe they were notices**.  So I don't know the answer.

(Ex. D (4/16/19 Walker Dep. Tr.) at 262:20-263:6, 267:1-23.)  In addition, as ON admits, PI made clear in its interrogatory responses that it views its 2014 email as notice.  (D.I. 240-2, Ex. 5 pp. 26-27.)  It does not matter whether this interrogatory response was verified because PI is not relying upon it as factual evidence—the 2014 email itself is the evidence.  Rather, PI is relying on its interrogatory as a disclosure of its contentions in this case.  PI has been clear that it gave notice if the parties' confidentiality agreement is not taken into account, and since ON has abrogated that agreement and injected the parties' pre-suit communications into the parties' litigation, PI may properly rely upon them to establish notice.

In addition, apart from the parties' previous confidentiality agreement, use of pre-suit communications for *notice* purposes does not violate Rule 408.  Indeed, both the advisory committee notes and case law support notice as an exception to Rule 408.  *See* Committee Notes, 2006 Amendment ("The amendment does not affect the case law providing that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice.  *See*, *e.g.*, *United States v. Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful).");  *Samsung Electronics Co., Ltd. v. Quanta Computer, Inc.*, No. C-00-4524, 2006 WL 2850028, at *5 (N.D. Cal. Oct. 4, 2006) ("Consequently, some evidence regarding the prelitigation negotiations may be admissible.  For

example, to demonstrate Compal had actual notice of the '273 patent and Samsung's assertion of infringement, Samsung intends to offer Exhibit STX 227, Samsung's initial letter it sent to Compal on February 5, 1999.").

Damages are also not limited to the specific product mentioned in PI's 2014 email, the NCP1246.  The Federal Circuit has held that "when the threshold specificity is met, the ensuing discovery of other models and related products may bring those products within the scope of the notice."  *Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).  The cases that ON cites are not to the contrary.  *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) merely held that "notice must be of 'the infringement,' not merely notice of the patent's existence or ownership."  PI's email clearly identified an infringement.  And *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346-47 (Fed. Cir. 2001) actually *reversed* summary judgment that no notice was given for related products (though it affirmed for other products not shown to be related).  And PI's expert Dr. Arthur Kelley has offered an opinion that the NCP1246 is similar to the other accused products.  (Ex. E (4/17/19 Kelley Infringement Report) at 4 n.7, 42.)

Moreover, ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████  Thus, notice is not limited to the NCP1246 as a matter of fact.

Finally, it is worth noting that ON filed substantively the same summary judgment in the parties' California litigation, with regard to notice by PI of infringement by ON of other PI patents in the same 2014 exchange, and ON's motion was denied.  (Ex. G (CA SJ Order) at 4-9.)

For all of these reasons, ON's motion for summary judgment on pre-suit notice and damages should be denied.

C.    **The Court Should Deny ON's Motion for Summary Judgment of Noninfringement of the '851 Patent and Instead Grant PI's Motion Based on Issue Preclusion**

ON's motion confirms that its defense to infringement of PI's '851 patent is the same as the defense that its predecessor Fairchild previously asserted and lost. PI's motion for summary judgment of issue preclusion and infringement (D.I. 245) should therefore be granted.

In addition, should the Court reach the merits of the other issues raised in ON's motion, it is apparent that ON relies upon waived and incorrect claim construction arguments and ignores what would be genuine disputes of material fact should ON be allowed to pursue this non-infringement theory at trial. ON is also wrong that PI's expert advanced new theories in his reply report.

First, like Fairchild before, ON relies upon a claim construction that it failed to request and thus waived. Most notably, ON argues that "[t]he claims require an oscillator that provides both an 'oscillation signal' and a **separate** 'maximum duty cycle signal.'" (ON brief at 8 (emphasis added).) ON further argues that these signals must be "distinct." (*Id.* at 8-11.) However, these are not issues or proposed constructions that ON included in the Joint Claim Construction Statement (D.I. 78) or its claim construction brief (D.I. 83), contrary to the Court's Scheduling Order, which required the parties to identify terms for construction according to a particular procedure and schedule (D.I. 23 at 11). ON thus waived its newly proposed constructions, just as Fairchild waived similar proposed (and incorrect) constructions in *Fairchild II*. (*See* D.I. 247 at A1374.) *See also Leader Technologies, Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 699-700 (D. Del. 2011) (finding waiver of claim construction arguments).

In addition, the Court correctly found in *Fairchild II* that the degree of separation allegedly required for the "oscillation signal" and "maximum duty cycle signal" was not even an issue of claim construction. (D.I. 247 at A1374.) Rather, it involved a factual dispute properly

6

submitted to the Jury. (*Id.*) The same is true here. PI's technical expert has explained in detail how the accused products include an oscillator that provides both claimed signals. For example, for the accused NCP107X product, Dr. Kelley shows where the existence of the two required signals from the oscillator is evidenced in the product's datasheet, including in the parameter table for the "Internal Oscillator":

**INTERNAL OSCILLATOR**

| | | | | | | |
|---|---|---|---|---|---|---|
| $f_{OSC}$ | Oscillation frequency, 65 kHz version, Tj = 25°C (Note 6) | – | 59 | 65 | 71 | kHz |
| $f_{OSC}$ | Oscillation frequency, 100 kHz version, Tj = 25°C (Note 6) | – | 90 | 100 | 110 | kHz |
| $f_{OSC}$ | Oscillation frequency, 130 kHz version, Tj = 25°C (Note 5 et 6) | – | 117 | 130 | 143 | kHz |
| $f_{jitter}$ | Frequency jittering in percentage of $f_{OSC}$ | – | – | ±6 | – | % |
| $f_{swing}$ | Jittering swing frequency | – | – | 300 | – | Hz |
| $D_{max}$ | Maximum duty–cycle<br>NCP1070/71/72/75 except NCP1072P100BG<br>NCP1076/77/72B & NCP1072P100BG | –<br>– | 62<br>65 | 68<br>69 | 72<br>73 | % |

(Ex. H (4/17/19 Kelley Infringement Report Ex. 2) at 42; *see also* Ex. I (Kelley Decl. adopting reports under oath).) He further explains, ███████████████████████



██████████████████████████ ON's expert Dr. Zane disagrees, this is a classic battle of experts, and the existence of two signals, including whether they satisfy the claimed requirements regardless of whether they may be transmitted on the same wire, is a factual issue for the Jury.

Moreover, ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ On those facts, the Jury found the oscillator of the accused Fairchild

parts met the identical claim limitation, ultimately finding infringement by the accused chips,

and this Court denied JMOL.  (D.I. 247 at A1374)  Fairchild did not appeal that issue.  *Power*

*Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1329 (Fed. Cir. 2016).

A reasonable jury in this case could likewise find infringement.

Dr. Kelley also did not inject a new opinion in his reply report.  Instead, he simply

provided more detail to rebut points made in Dr. Zane's report, by explaining *how* both claimed

signals are implemented by the output of the oscillator.  (Ex. K (6/14/19 Kelley Reply Report) at

1-2.)  The "edges" mentioned in ON's motion are not newly accused signals but features of the

*same* signals that Dr. Kelley accused in his original report.  (*Id.* at 2 ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ In other words, the edges, and how they are

used by the circuit, are simply a mechanism by which the originally accused oscillator output can contain the required two signals on the same wire (which are later split).[3]

Providing additional explanation or evidence is not the same as providing a new infringement theory, as ON itself has recognized in the parties' California litigation.  For example, with regard to ON's '933 patent, ON argued that its expert Dr. Madisetti had not "created a new infringement theory" when he "merely supported and confirmed ON's original infringement theory using additional evidence."  (Ex. L (ON Opp to CA MSJ) at 18.)  In so arguing, ON cited *Finjan, Inc. v. Blue Coat Systems, Inc.*, No. 13-cv-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015), which held that "[t]he dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed 'theory' is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the 'theory' is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation."  *Id.* at *2. "[I]dentification of additional evidentiary proof showing that the accused element did in fact practice the limitation" is exactly what Dr. Kelley did.  The accused *signals* remain the same as the signals identified in Dr. Kelley's opening report.

ON's claim construction and prosecution disclaimer arguments are also mistaken.  The asserted claims do require both an "oscillation signal" and a "maximum duty cycle signal"—but that relates to the dispute of fact discussed above (and resolved in PI's favor by the Jury in *Fairchild II*).  ON's assertion that "[a]ccording to the claim language, the 'oscillation signal' and

---

[3] ON's citation to PI's other expert, Joseph McAlexander, regarding "edges" is also misleading.  Mr. McAlexander is not PI's expert on the '851 patent, and he was not discussing the signals that Dr. Kelley has identified as the "oscillation signal" and a "maximum duty cycle signal."  (*See* D.I. 240-3, Ex. 20, discussing PI products accused of infringing ON's SR patents.)

the separately identified 'maximum duty cycle signal' are two distinct signals" is not supported by any citation. The claims do not use the words "distinct," "discrete," or "separate," and, as noted above, ON neither sought nor received any such construction in this case.

ON also overreads *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP,* 616 F.3d 1249 (Fed. Cir. 2010), which both this Court and the Federal Circuit have distinguished. For example, as this Court has observed, *Becton* involved mechanical devices rather than electronics. *Intellectual Ventures I LLC v. Symantec Corp.*, No. 13-cv-440-LPS, 2016 WL 948879, at *3 (D. Del. Mar. 10, 2016) ("Here, the claims involve digital, rather than physical separation."). The present case also involves digital separation, as explained by Dr. Kelley and admitted by Dr. Zane. In *Skedco, Inc. v. Strategic Operations, Inc.*, 685 Fed. Appx. 956, 960 (Fed. Cir. 2017), the Federal Circuit also explained that the result of *Becton* depended upon its specific claims and claim construction. *Id.* at 960 ("Here, nothing in the agreed-upon constructions of 'pump' and 'valve' forbids a pump from housing an internal valve."). For example, in *Becton*, the claim required different components "connected" to one another, which would not be possible if two components were combined. *Becton*, 616 F.3d at 1255; *Apple, Inc. v. Samsung Electronics Co.*, No. 12-cv-00630-LHK, 2014 WL 252045, at *8 (N.D. Cal. Jan. 21, 2014) (noting that *Becton* turned on "connected" and also distinguishing a digital claim).

ON's reliance on the patent specification also fails. The specification nowhere states that the "oscillation signal" and the "maximum duty cycle signal" *must* be separate. ON simply attempts to read the preferred embodiment into the claims, which is improper.[4]

_____

[4] ON's assertion that the claims are limited to the embodiment of the oscillator shown in Figure 3 is also contrary to the patent specification itself. (*See, e.g.*, Ex. M ('851 patent) at 11:17-30, explaining the patented invention can use current mode control, which would involve an oscillator providing a different set of signals from the oscillator shown in, for example, Figure

ON also misreads the prosecution history.  To be sure, PI added language requiring both an "oscillation signal" and a "maximum duty cycle signal," but it did not add the word "separate," and it did not argue that separation was the basis for patentability.  Nothing that ON quotes says otherwise.  (*See* D.I. 240-3, Ex. 15 at pp. 3, 6.)

Furthermore, contrary to ON's argument, PI has not advanced an interpretation requiring "separate" signals in previous litigation.  To the contrary, PI *defeated* Fairchild's "separate signal" argument in the prior litigation, as explained in PI's own motion for summary judgment. (D.I. 245.)  In addition, ON's quotation of the Court's opinion regarding "multiple signals" is both incomplete and beside the point.  It is incomplete because the Court actually accepted PI's argument that "the *combination* of features of a single oscillator generating multiple signals whose frequency varied in a range based on a frequency variation signal, together with the other recited elements ... was novel and non-obvious."  *Power Integrations, Inc. v. Fairchild Semi. Int'l, Inc.*, 578 F. Supp. 2d 698, 704 (D. Del. Sept. 24, 2008) (emphasis in original).  In other words, the Court did not hold that "multiple signals" was the basis for novelty, as opposed to the claimed combination that included frequency variation.  The Court also observed that "the prior art before the Examiner already disclosed oscillators that generated multiple signals, including maximum duty cycle signals."  *Id.* at 705.  Even more importantly, ON's "multiple signals" argument misses the point of the parties' dispute in this case.  PI accepts that its claims require two signals, namely an "oscillation signal" and a "maximum duty cycle signal."  The present dispute is whether these signals must be entirely separate outputs from the oscillator, carried on two different wires.  Nothing that ON cites represents a PI admission on that issue.

---

3, which implements voltage mode control; Ex. E (4/17/19 Kelley Infringement Report) at 23-26.)

Finally, ON's prosecution history estoppel argument fails for reasons similar to its prosecution disclaimer argument. While PI added the entire "oscillator" limitation to overcome prior art—not simply the second signal—it did not argue that the generation of "multiple signals" was what distinguished the prior art. (*See* D.I. 240-3, Ex. 15 at pp. 3, 6.) To the contrary, as this Court observed, "the prior art before the Examiner already disclosed oscillators that generated multiple signals, including maximum duty cycle signals." 578 F. Supp. 2d at 705. Instead, PI focused on a combination of elements that produced variable frequency, as this Court found. *Id.* at 704. PI's amendment and arguments thus did not address whether the two claimed signals must be entirely separate, or whether they could share a single wire before being split. In addition, if the issue goes to trial, and should the Jury in this case find that distinction significant for literal infringement (contrary to the prior Jury's finding), nothing in the prosecution precludes PI from arguing equivalence, because *how* the two signals are transmitted is tangential to PI's amendment, an exception to prosecution history estoppel that ON itself acknowledges. *See Integrated Tech. Corp. v. Rudolph Techs., Inc.,* 734 F.3d 1353, 1359 (Fed. Cir. 2013).

In sum, the Court should grant PI's motion for summary judgment and find infringement of the '851 patent as a matter of law, due to issue preclusion. However, if the Court reaches the issues raised by ON's motion, it should deny that motion because, at the very least, there are disputes of material fact, both as to literal infringement and infringement under the doctrine of equivalents.[5]

---

[5] ON's brief also mentions other disputed facts in passing. For example, it argues that the accused "oscillation signal" does not "oscillate," and it appears to advance yet another waived (and undeveloped) claim construction ("'oscillation signal' requires a signal that varies back and forth"). Dr. Kelley's report explains why the claim is met. (*E.g.*, Ex. H (4/17/19 Kelley Infringement Report Ex. 2) at 42 ▮▮▮▮▮▮▮▮▮▮▮▮

### D.    The Court Should Deny ON's Motion for Summary Judgment of Noninfringement of the '366 Patent

ON offers a variety of reasons that it allegedly does not infringe PI's '366 patent, but all of its arguments involve waived and incorrect claim construction and material disagreements between experts.

ON begins by quoting arguments that PI made *in the alternative* for a non-means-plus-function claim construction *that the Court did not adopt*. (*See* D.I. 240-4, Ex. 24 at p. 6.) The analysis should instead begin with the Court's *actual* means-plus-function claim construction. (D.I. 110 at 18-20.) The Court held that "[t]he functions of the soft start circuit should be construed in accordance with the plain meaning of the claims setting forth such soft start circuit functions" and that "[t]he corresponding structures related to the soft start circuit are shown in Figures 3, 6, and 9 of the '366 patent and described in 6:7-17, 6:35-7:18, 11:40-50, and 12:5-10. This structure requires a frequency variation signal and a pulse width modulation frequency signal." (*Id.*)

In his report, Dr. Kelley explains in detail why the accused products meet the Court's claim construction. (Ex. N (4/17/19 Kelley Infringement Report Ex. 4).) For example, with respect to the "pulse width modulation frequency signal," Dr. Kelley explains why ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ is an equivalent structure under 35 U.S.C. §112 ¶ 6:



(*Id.* at 15.)  Importantly, infringement of a means-plus-function element requires only an *equivalent* structure.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (cited by ON).

ON next relies upon the Court's construction in *Fairchild II*.  (D.I. 240-4, Ex. 26 at pp. 9-10.)  This construction does not govern the present case, as it is neither the construction that ON advocated nor the one the Court adopted.  (*Compare* D.I. 110 at 18-20.)  ON also appears to seek several new claim constructions for "soft start circuit means" (*e.g.,* ON brief at 25-26), but again these constructions are both waived and contrary to the Court's actual construction, which says nothing about external components or control loops.  (*Id.*; *compare* D.I. 110 at 14-16 (construing a different limitation that says "internal" to require an internal signal).)

ON also misreads the prosecution history.  When PI said the claimed feature is "independent" of the control loop, it merely meant the claimed invention can work with different forms of control, for example with *either* current mode control or voltage mode control, the two main alternatives for PWM control of power switches.  This is made clear when PI's remarks are placed in context.  On the same page of the prosecution history that ON quotes, PI also stated:

> To be sure, the '366 patent explains at column 11, lines 25-39, that the teachings of the claimed invention are ***not limited to a specific feedback method or circuit***, but instead ***may be utilized in a variety of arrangements***, including for example ***current mode regulation or voltage mode regulation***.

(D.I. 240-4, Ex. 30 at p. 20 (emphasis added).)  The patent specification itself says the same thing.  (Ex. O ('366 patent) at 11:25-35.)  No reasonable POSITA reading the specification and this prosecution history would conclude that PI had *disclaimed* current mode regulation as ON now argues; to the contrary, PI expressly and repeatedly said current mode control was within the scope of the claimed invention.  In addition, as Dr. Kelley explains in detail, the accused features do operate in the way PI described in the prosecution history, notwithstanding what Dr.

14

Zane has argued.  (Ex. K (6/14/19 Kelley Reply Report) at 19-20.)  This is a classic battle of experts.[6]

ON also ignores that the accused *signal* is internal even if ███████████████  Dr. Kelley explains that the accused product feature is called ███████████  (*E.g.*, Ex. N (4/17/19 Kelley Infringement Report Ex. 4) at 12.)  Moreover, Dr. Kelley again provides a detailed response to Dr. Zane's contrary opinion.  (Ex. K (6/14/19 Kelley Reply Report) at 16-19.)  For example, he explains that ███████████████  for current mode operation, which PI expressly *included* within the scope of the invention during prosecution.  (*Id.* at 18-19; *see also* D.I. 240-4, Ex. 30 at p. 20.)  Moreover, the accused products are not like the TEA2262 prior art distinguished during prosecution, and ON does not argue otherwise.  (*See* Ex. P (7/10/08 Response to Office Action on '366 patent) at 14-15; Ex. Q (TEA2262 datasheet - DX-35 from *Fairchild I*).)

In addition, the amendment during reexamination to add the word "means" does not preclude PI's argument under the doctrine of equivalents.  PI always contended that the "soft start circuit" should be construed as a means-plus-function limitation, as it was construed in *Fairchild I*.  PI merely added the word "means" in reexamination to conform to its proposed construction after the Federal Circuit held that "soft start circuit" was not subject to means-plus-function construction.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, 711 F.3d 1348, 1366 (Fed. Cir. 2013).  In addition, as explained by Dr. Kelley, the addition of the word "means" during reexamination was tangential to the issues raised in this case.  (Ex. K (6/14/19 Kelley

---

[6] It is also notable that some Fairchild products found to infringe in *Fairchild I* used current mode control. (Case No. 04-1371 LPS, D.I. 417 at 506:5-507:2 ("Q. Other than [] they sense the current sense as fast moving ramp does that change your opinion on infringement? A. No."); *see also id.* at 305:21-306:20, 307:1-308:21; Case No. 04-1371 LPS, D.I. 419 at 1131:2-8.)

Reply Report) at 16-19.)  *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1368 (Fed. Cir. 2001), cited by ON, is not to the contrary.  In that case, "J & M explicitly sought coverage of a single clamp embodiment of its invention," and "[t]he examiner rejected these broadly drafted claims."  *Id.*  The Federal Circuit concluded that "[t]he examiner's rejection, coupled with J & M's acquiescence and substitution of narrower claims, establishes that a single-clamp embodiment is not supported by the written description."  *Id.*  Thus, contrary to ON's argument, *J & M* does not hold that the mere addition of the word "means" forecloses use of the doctrine of equivalents.

Finally, ON raises another noninfringement argument, relating to a soft start latch.  ON argues that Dr. Kelley's opening report failed to identify an equivalent of the patent's soft start latch in the accused products, but Dr. Kelley explained in his reply report that this is incorrect.  (Ex. K (6/14/19 Kelley Reply Report) at 21-22.)  Moreover, Dr. Kelley's reply report *does not accuse any new structure*; rather, it explains in detail why the structure *already identified* in Dr. Kelley's opening report in fact included the equivalent of a soft start latch.  (*Id.* at 21 ("

For example, Dr. Kelley explains:



(*Id.*)  Dr. Kelley's reply report just further explains the operation of the circuit structures in the identical schematic pages cited in the claim chart in his original report.  No new theory is presented, nor is any new evidence relied upon.

The Court should deny ON's motion because there are numerous disputes of material fact, both as to literal infringement and infringement under the doctrine of equivalents.

**E.    The Court Should Deny ON's Motion for Summary Judgment of Noninfringement of the '788 Patent**

ON argues that it does not infringe PI's '788 patent because PI has failed to identify "a circuit element" that includes all the claimed features.  This argument is legally wrong and factually disputed.

First, it is well recognized in patent law that "a" means "one or more."  *Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1350 (Fed. Cir. 2005).  Thus, even if PI identified two circuit elements, they are still, together, "a circuit element."  In addition, ON ignores how electrical circuits work: if two electrical circuits are connected, they become one circuit.  ON's argument is also contrary to the intrinsic evidence of the patent, which shows that the capacitive-based timer of one disclosed embodiment is implemented with multiple components.  (*See, e.g.,* Ex. R ('788 patent) at 6:15-51; Fig. 3.)

Second, ON's motion is premised on resolving another factual dispute between experts.  Dr. Kelley has explained in detail why ▇▇▇▇▇▇▇▇▇ is "a circuit element" that includes all the claimed features.  (Ex. S (4/17/19 Kelley Infringement Report Ex. 6) at 4-8 ▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Kelley supports his opinion by detailed

analysis with reference to the datasheet and product schematics. That Dr. Zane (or ON's

lawyers) might disagree with Dr. Kelley's opinion on how the circuit operates and how the

various components are coupled to one another just raises disputes of fact.

The Court should thus deny ON's motion as subject to a genuine dispute of material fact.

**F.    The Court Should Deny ON's Motion for Summary Judgment of
        Noninfringement of the '475 Patent**

ON's argument again ignores genuine disputes of material fact. The Court construed

"timing the feedback signal" to mean "measuring the amount of time that passed between two

successive transitions of the feedback signal." (D.I. 110 at 23.) Applying this construction, Dr.

Kelley explained why the accused products meet this limitation:



(Ex. T (4/17/19 Kelley Infringement Report Ex. 8) at 11-12.) Again, Dr. Kelley supports his

opinion by detailed analysis of the datasheet and schematics for the accused product. ON does

not actually dispute that Dr. Kelley understands and has accurately described the structure and

operation of the fault detection circuitry in the NCP105X.

Rather, ON's contrary argument is based on adding new requirements not present in the

Court's claim construction, and offering attorney argument unsupported by any evidence. For

example, the diagram on page 35 of ON's brief has no citation and does not appear in any expert

report. PI disagrees that this diagram accurately represents either the operation of the disclosed

embodiment of the '475 patent or the accused NCP105X, and further disagrees with ON's

18

unsupported lawyer argument that the alleged differences between the two "could yield entirely different results in practice."

In addition, ON's argument that the claim requires the circuit to have a record of the precise amount of time that passes between two successive transitions of the feedback signal—rather than measuring the time between transitions of the feedback signal to determine if the amount of time between such transitions exceeds a predetermined maximum time—would improperly read out the patent's disclosed embodiments because, as explained by Dr. Kelley,

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████ (Ex. K (6/14/19 Kelley Reply Report) at 51; *see also id.* at 49-50 ████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

Thus ON's new, unsupported attorney argument, is contrary to the patent specification and—if it was supported by actual evidence—at best would raise disputes of fact.

The Court should thus deny ON's motion as subject to a genuine dispute of material fact and not based on the Court's claim construction.

### G.     The Court Should Deny ON's Motion for Summary Judgment on Willfulness

With regard to the '851 and '366 patents, the Court should deny ON's motion for the same reason that it should deny ON's motion on notice.  PI put ON on notice of infringement in

2014, and ON never offered any noninfringement defense before this suit began.  (Ex. F (6/28/19 Jackson Dep. Tr.) at 258:18-265:12; Ex. U (6/16/2014 Balakrishnan email to Jackson); Ex. V (9/25/14 ON Presentation); *see also* Ex. W (1/16/19 Balakrishnan Dep. Tr.) at  33:15-37:16, 53:3-16, 81:18-93:14; Ex. U; Ex. X (10/14/2014 Draft Settlement Agreement Letter); Ex. D (4/16/19 Walker Dep. Tr.) at 261:1-279:16.)  Instead, ON simply threatened PI with its own patents (*see id.*), and then filed suit.[7]

ON was also aware of PI's '788 patent at least as early as 2002 because it was cited by the Examiner during prosecution of ON's 6,480,043 patent.  (Ex. Y (6,480,043 patent).)  ON filed its own patent on fault protection and distinguished PI's '788 patent both by argument and by narrowing its claims.  (*See* Ex. Z ('043 File history 4/26/02 Amendment) at 2, 21-22, amending the claims to limit the "timer" that is used to time the feedback signal to one that "monitors a level of the supply voltage for providing a timer period" and arguing that the Balakrishnan '788 patent does not disclose such a timer.)  However, ON still infringes PI's broader and more fundamental patent, and was aware of it long before this litigation.  ████████

████████████████████████████████████████████  (Ex. AA (5/17/19 Zane Non-Infringement report) at 98 ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████

---

[7] ON also asserted it had prior art (for PI's '079 patent, rather than the patents at issue here), but did not give it to PI.  (*See id.*)



The Jury in this case will be able to infer from the circumstantial evidence that ON copied not just PI's first TinySwitch product but also subsequent TinySwitch products embodying the patents-in-suit. Based on the similarity of the accused products to the TinySwitch Plus, PI's inventor and CEO Balu Balakrishnan also believes that ON copied the

TinySwitch Plus and not just the TinySwitch.  (Ex. W (1/16/19 Balakrishnan Dep. Tr.) at 140:7-12.)

In addition, the Jury can infer willful blindness of PI's patent rights from ON reverse engineering and copying PI's products while knowing—at the very least from the Motorola litigation and the prosecution history of its own related patent—that PI patented its relevant technology.  As the Supreme Court explained in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011), defendants who "deliberately shield[] themselves from clear evidence of critical facts that are strongly suggested by the circumstances . . . are just as culpable as those who have actual knowledge. "  *Id.* at 2062-63.  Notably, in *Global-Tech*, the Supreme Court permitted an inference the defendant had willfully blinded itself of patent rights even though there was no direct evidence that the defendant was aware of the asserted U.S. patent before suit.  *See id.* at 2064 ("Pentalpha argued that there was insufficient evidence to support the jury's finding of induced infringement under § 271(b) because Pentalpha did not actually know of SEB's patent until it received the notice of the Sunbeam lawsuit in April 1998.").  The Supreme Court permitted the Jury to infer willful blindness where the defendant copied the patentee's innovative product and also performed "market research" and "gather[ed] information as much as possible"—even though the defendant copied an overseas version of the product that lacked U.S. patent markings.  *Id.* at 2071.  The evidence, summarized above, about ON's own copying and market research will permit the Jury to reach a similar inference here.

The Court should therefore deny ON's motion on willfulness.

## III.    CONCLUSION

For the reasons stated above, the Court should deny ON's motions for summary judgment.

22

Dated:  August 20, 2019          FISH & RICHARDSON P.C.

By: */s/ Warren K. Mabey, Jr.*
    Joseph B. Warden (#5401)
    Warren K. Mabey Jr. (#5775)
    222 Delaware Avenue, 17th Floor
    Wilmington, DE 19801
    (302) 652-5070
    warden@fr.com
    mabey@fr.com

    Frank E. Scherkenbach
    FISH & RICHARDSON P.C.
    One Marina Park Drive
    Boston, MA 02210-1878
    scherkenbach@fr.com

    Howard G. Pollack
    Michael R. Headley
    Neil A. Warren
    FISH & RICHARDSON P.C.
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    Telephone: (650) 839-5070
    pollack@fr.com
    headley@fr.com
    warren@fr.com

    John W. Shaw (#3362)
    Andrew E. Russell (#5382)
    Shaw Keller LLP
    I.M. Pei Building
    1105 North Market Street, 12th Floor
    Wilmington, DE 19801
    (302) 298-0700
    jshaw@shawkeller.com
    arussell@shawkeller.com

    **ATTORNEYS FOR**
    **POWER INTEGRATIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2019, this document was served on the persons listed

below in the manner indicated:

**BY EMAIL**
John G. Day
Andrew C. Mayo
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
jday@ashby-geddes.com
amayo@ashby-geddes.com

Brett J. Thompsen
Mark Speegle
Nicholas Schuneman
BAKER BOTTS L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
brett.thompsen@bakerbotts.com
mark.speegle@bakerbotts.com
nick.schuneman@bakerbotts.com

Roger Fulghum
BAKER BOTTS LLP
910 Louisiana
Houston, TX 77002
roger.fulghum@bakerbotts.com

Colette Reiner Mayer
Erik Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
crmayer@mofo.com
ejolson@mofo.com

/s/ *Warren K. Mabey, Jr.*
Warren K. Mabey, Jr.